# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **KENNETH H. MARSHALL,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:09cv00065 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | By:   Pamela Meade Sargent |
| Defendant. | ) | United States Magistrate Judge |

### *I. Background and Standard of Review*

Plaintiff, Kenneth H. Marshall, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003 & Supp. 2010). This court has jurisdiction pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more

than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Marshall protectively filed his application for SSI on September 11, 2006, alleging disability as of July 23, 2003, based on a hernia, a tumor, loss of balance and feeling and depression. (Record, ("R."), at 143-45, 159, 192.) The claim was denied initially and upon reconsideration. (R. at 70-72, 78, 79-80, 82-83.) Marshall then requested a hearing before an administrative law judge, ("ALJ"). (R. at 84.) The ALJ held a hearing on February 3, 2009, at which, Marshall was represented by counsel. (R. at 35-67.)

By decision dated March 12, 2009, the ALJ denied Marshall's claim. (R. at 23-34.) The ALJ found that Marshall had not engaged in any substantial gainful activity since September 11, 2006. (R. at 25.) The ALJ found that the medical evidence established that Marshall had severe impairments, namely obesity, status post repair surgery for hernia, status post surgery for removal of a tumor on his neck, headaches, sleep apnea and hypertension, but he found that Marshall's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 25, 27.) The ALJ also found that Marshall had the residual functional capacity to perform sedentary[1] work limited by an inability to

---

[1]Sedentary work involves lifting items weighing up to 10 pounds at a time with occasional lifting or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are

crawl, to climb ladders, ropes or scaffolds and to work around vibration, hazardous machinery and unprotected heights, limited to occasionally operating foot controls with the lower extremities and kneeling, crouching, stooping, bending or climbing ramps or stairs. (R. at 27.) The ALJ found that Marshall was unable to perform any past relevant work. (R. at 32.) Based on Marshall's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Marshall could perform, including sedentary jobs as a clerical worker, a product grader/sorter, a machine tender and a hand packer. (R. at 32-33.) Thus, the ALJ found that Marshall was not under a disability as defined under the Act and was not eligible for benefits. (R. at 33-34.) *See* 20 C.F.R. § 416.920(g) (2010).

After the ALJ issued his decision, Marshall pursued his administrative appeals, but the Appeals Council denied his request for review. (R. at 1-5, 9-13, 19.) Marshall then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2010). The case is before this court on Marshall's motion for summary judgment filed March 11, 2010, and the Commissioner's motion for summary judgment filed April 8, 2010.

## II. Facts

Marshall was born in 1963, (R. at 143), which classifies him as a "younger

---

required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 416.967(a) (2010).

person" under 20 C.F.R. § 416.963(c). He has a tenth-grade education[2] and past relevant work experience as a construction worker. (R. at 39-40, 209.) Marshall testified at his hearing that he had not sought mental health treatment. (R. at 53.) He reported that he had to be reminded to take his medication. (R. at 170.)

Lela Sauers, a vocational expert, also was present and testified at Marshall's hearing. (R. at 58-65.) Sauers classified Marshall's past work as a construction laborer as medium[3] work. (R. at 60-61.) Sauers was asked to consider a hypothetical individual who had a marked[4] limitation on his abilities to understand, remember and carry out complex instructions, to use judgment regarding complex work-related decisions, to interact with supervisors and co-workers and to respond appropriately to usual work situations and changes in a routine work setting. (R. at 61.) Sauers stated that such an individual could not perform substantial full-time work. (R. at 61.) Sauers was then asked to assume a hypothetical individual of Marshall's age, education and past work experience, who was limited to lifting and carrying items weighing up to 10 pounds, who could sit with normal breaks for a total of six hours in an eight-hour workday, who could stand and/or walk for a total of six hours in an eight-hour workday with normal breaks, who could occasionally push and pull with the lower extremities, who could occasionally climb stairs and ramps, stoop, kneel and crouch, who should never climb ladders, ropes or scaffolds or crawl and who should

---

[2]Marshall reported on his Disability Report that he completed the eleventh grade. (R. at 164.) However, he testified at his hearing that he completed the tenth grade. (R. at 39.)

[3]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. § 416.967(c) (2010).

[4]Marked was defined to Sauers as "a serious limitation." (R. at 61.)

avoid hazards such as unprotected heights, dangerous moving machinery and vibration. (R. at 62-63.) Sauers identified jobs that existed in significant numbers in the national and regional economy that such an individual could perform, including jobs as an unskilled clerical worker, a grader, a sorter, a machine tender, a packer and an assembler. (R. at 64.) Sauers testified that there would be no jobs available should the individual need to be absent from work more than two days a month. (R. at 64.)

In rendering his decision, the ALJ reviewed records from B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; Virginia Commonwealth University; Rappahannock General Hospital; Northern Neck Free Health Clinic; Norton Community Hospital; Dr. Jody Bentley, D.O.; Dr. Tiffani M. White, D.O.; University of Virginia; Memorial Hermann Hospital; and Henri Woodman Community Clinic.

The record shows that Marshall was seen at the Virginia Commonwealth University, ("VCU"), with complaints of abdominal pain, neck pain and headaches. (R. at 236-399, 436-37, 445-47, 452-57, 467-74.) On July 27, 2006, Marshall presented to the emergency room with complaints of abdominal pain after falling from a ladder. (R. at 254-79, 295.) He reported that he sustained a stab wound to his left upper quadrant three years prior.[5] (R. at 254.) He was advised to make a follow-up appointment to discuss hernia repair. (R. at 255.) On September 25, 2006, Marshall had a salivary gland tumor removed from the left side of his neck. (R. at 322-23.) During a follow-up visit in October 2006, Marshall complained of mild weakness at the left side of his mouth and numbness and pain around his left ear, but stated that his symptoms were improving. (R. at 304-05.) It was reported that Marshall's alleged pain

---

[5]The record shows that Marshall was seen at Memorial Hermann Hospital on July 29, 2003, for a stab wound to the chest. (R. at 646-47.)

had improved and he was healing without signs of redness, discharge or infection. (R. at 304.) On November 6, 2006, Marshall underwent surgery to repair an incisional hernia. (R. at 320-21, 333-34.) Progress notes indicate that Marshall tolerated the procedure well, was discharged in stable condition and had no complications during his follow-up visit. (R. at 321, 326-27, 334, 473-74.)

On December 8, 2006, Marshall presented to Rappahannock General Hospital with complaints of body weakness and dizziness. (R. at 345-58.) A CT scan of Marshall's brain, a chest x-ray and an electrocardiogram were unremarkable. (R. at 353-55.) In addition, Marshall's physical examination revealed that he appeared in no acute distress. (R. at 357.) Marshall had normal motor strength in his arms and legs and intact cranial nerves and sensation. (R. at 357.) He was discharged in stable condition with a diagnosis of weakness, etiology uncertain. (R. at 346, 357.)

On February 10, 2007, Marshall presented to the emergency room at VCU with complaints of headaches, dizziness, abdominal pain, nausea, shortness of breath and left arm pain. (R. at 369-82.) A CT scan of Marshall's abdomen showed some thickening in the colon, but Marshall had a nonobstructive bowel gas pattern without evidence of bowel perforation. (R. at 388.) On July 24, 2007, a CT scan of Marshall's abdomen showed no evidence of gallstones or acute cholecystitis and a stable left renal lesion, probably representing a cyst. (R. at 436.) On August 13, 2007, Marshall complained of headaches, confusion and neck pain. (R. at 402-17.) A CT scan of his head showed no evidence of acute intracranial abnormality. (R. at 419.) He was diagnosed with a viral syndrome. (R. at 416.)

On May 1, 2007, Marshall was seen at the Northern Neck Free Health Clinic

with complaints of nausea and abdominal discomfort. (R. at 431.) Marshall reported that he had been working up to 18 hours a week as a carpenter. (R. at 431.) He was diagnosed with an abdominal split hernia, remote bloody stools and intermittent post prandial cramps. (R. at 431.) Marshall was restricted from lifting items weighing more than two pounds due to the split hernia. (R. at 430.) On August 15, 2007, Marshall complained of left neck and ear pain and difficulty swallowing. (R. at 427.) He was diagnosed with neck pain and hypertension, well-controlled on medication. (R. at 427.) On October 17, 2007, Marshall reported that he was very "stressed and irritable." (R. at 426.) He was diagnosed with a mass on the left side of his neck, anxiety, depression and hypertension. (R. at 426.)

On February 4, 2008, Marshall was seen by Dr. Jody Bentley, D.O., and Dr. Tiffani White, D.O., for a new patient evaluation. (R. at 484-86.) Marshall was in no acute distress. (R. at 485.) Dr. Bentley noted a mass on Marshall's uvula, status post salivary gland removal. (R. at 485.) Marshall had normal strength in all extremities. (R. at 485.) He was diagnosed with hypertension, salivary gland cancer status post removal, soft palate mass, tobacco abuse, probable obstructive sleep apnea, probable chronic obstructive pulmonary disease, polydipsia, polyphagia, polyuria, fatigue and gastroesophageal reflux disease. (R. at 486.) On March 17, 2008, Marshall reported that he was feeling overwhelmed due to his financial status. (R. at 482.) On April 16, 2008, Dr. White reported that Marshall could not work and that it could not be determined when he could return to work. (R. at 462, 478.) She based this finding on Marshall's diagnosis of abdominal pain, probable obstructive sleep apnea, hypertension, gastroesophageal reflux disease, anxiety, dyslipidemia and a history of salivary gland cancer. (R. at 462, 478.) On April 21, 2008, Marshall complained of

headaches associated with anxiety, and memory loss "at times." (R. at 480.) Dr. White referred Marshall for a "mini mental exam."[6] (R. at 480.) On June 6, 2008, Marshall complained of increased headaches, nausea and blurred and double vision. (R. at 479.) On June 24, 2008, Marshall's examination was grossly neurologically intact. (R. at 514.) Dr. White reported that a review of Marshall's MRI of April 17, 2008, demonstrated a benign pineal cyst, which could be treated conservatively. (R. at 514.) On December 3, 2008, a myocardial perfusion scan showed no evidence to suggest myocardial ischemia. (R. at 618.) On December 15, 2008, an ultrasound of Marshall's kidneys was performed. (R. at 614.) It was reported that the area of Marshall's left kidney was difficult to image due to Marshall's body size and the kidney's location, but that there appeared to be a cyst on the left kidney. (R. at 614.) On December 22, 2008, Marshall was diagnosed with headaches; uncontrolled hypertension; fatty liver disease; psoriasis, stable; gastroesophageal reflux disease, controlled; allergies; dyslipidemia; anxiety; depression; chronic pain syndrome; and obstructive sleep apnea. (R. at 615.) On January 19, 2009, Marshall complained of a headache behind his left eye, which radiated into his left cheek and ear, sinus congestion and sore throat. (R. at 664.) Examination showed that Marshall was in no acute distress. (R. at 664.) It was noted that exercise counseling was done. (R. at 664.) Dr. White noted that Marshall's hypertension was improving. (R. at 664.) Although Dr. White diagnosed Marshall with physical impairments, she did not indicate any physical limitations that resulted from those impairments. (R. at 479-87, 615-17, 622-28, 664.)

The record shows that Marshall presented to the emergency room at Norton

---

[6]There is no documentation contained in the record to show that Marshall followed through with the evaluation.

Community Hospital on 11occasions between February 13, 2008, and November 20, 2008, for various complaints, including chronic abdominal pain, shortness of breath, headaches, nausea, vomiting and diarrhea. (R. at 570-603.) On December 31, 2008, an MRI of Marshall's abdomen showed a cyst on his left kidney and enlarged liver. (R. at 619-20.) On April 17, 2008, a CT scan of Marshall's head showed an enlargement of the pineal gland, possibly a pineal cyst or tumor. (R. at 460.) On April 25, 2008, an MRI of Marshall's brain showed a lesion in the pineal gland, which represented a cyst with peripheral enhancement or a tumor. (R. at 459.) On June 30, 2008, a CT scan of Marshall's chest showed mild emphysematous changes, degenerative changes in the spine and suspect fatty infiltration of the liver. (R. at 583.) Over the course of his treatment, Marshall was diagnosed with acute abdominal pain, possible wall hernia, chronic headaches, chest wall inflammation and peptic ulcer disease. (R. at 539, 572, 575, 578, 589, 592, 595, 598, 600, 603.)

On April 8, 2008, Marshall was seen at the University of Virginia for a pulmonary function test, which showed early interstitial lung disease and pulmonary vascular disease or emphysema. (R. at 535.) The same day, Marshall was seen for evaluation of a possible soft palate mass. (R. at 528-30.) He reported that, at that time, he smoked a half a pack of cigarettes per day, but had smoked two packs per day for 30 years. (R. at 528.) He reported that until one year prior, he had consumed a 12-pack of beer a day. (R. at 528.) It was reported that Marshall had a small cyst along his uvula, which was neither obstructive nor infected, and did not require intervention. (R. at 529.) On April 27, 2008, Marshall underwent a sleep study, which showed moderate sleep apnea. (R. at 463, 509-13, 522-27.) Nasal continuous positive airway pressure, ("CPAP"), provided significant improvement. (R. at 522.) On May 27,

2008, Marshall complained of shortness of breath. (R. at 531-33.) He reported that he smoked two packs of cigarettes a day, and that he had done so since the age of nine. (R. at 531.) He denied alcohol use, stating that he "quit years ago." (R. at 531.) On July 24, 2008, Dr. Bruce Schirmer, M.D., reported that Marshall had no hernias, normal reflexes and normal musculoskeletal findings. (R. at 637.) Marshall was alert and oriented, and his psychological examination was within normal limits. (R. at 637.) Dr. Schirmer did not recommend surgery and stated that he could not objectively identify a cause for Marshall's alleged pain. (R. at 637, 639.) On August 19, 2008, Marshall complained of chronic pain, anxiety and shortness of breath. (R. at 631-32.) Dr. Christine M. Lin, M.D., reported that Marshall appeared anxious and was tearful at times. (R. at 632.)

On December 23, 2008, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated Marshall at the request of Marshall's attorney. (R. at 604-13.) Marshall reported that while employed in 2003, he was assaulted with a knife. (R. at 605.) He reported having significant physical and psychological difficulties since that time. (R. at 605.) The Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), test was administered, and Marshall obtained a verbal IQ score of 74, a performance IQ score of 74 and a full-scale IQ score of 72. (R. at 605.) Lanthorn reported that school records showed Marshall's IQ score at 87 in 1979. (R. at 606.) The Minnesota Multiphasic Personality Inventory-2, ("MMPI-2"), test was administered. (R. at 610-11.) Lanthorn reported that there was some evidence to suggest that Marshall may have responded in a random or unselective manner towards the end of the test. (R. at 611.) He also reported that there was some evidence to suggest that Marshall attempted to respond in a frank and open fashion and that he was willing to admit to

minor faults. (R. at 611.) Lanthorn reported that Marshall's test results indicated that he was having significant problems with concentration and memory difficulties and was easily distracted and confused. (R. at 612.) Lanthorn diagnosed generalized anxiety disorder, major depressive disorder, single episode, severe, pain disorder associated with both psychological factors and general chronic medical condition and borderline intellectual functioning. (R. at 612.) Lanthorn indicated that Marshall had a then-current Global Assessment of Functioning score, ("GAF"),[7] of 55.[8] (R. at 612.) Lanthorn encouraged Marshall to seek mental health treatment. (R. at 612.)

Lanthorn completed a mental assessment indicating that Marshall was slightly limited in his ability to carry out simple instructions and to make judgment on simple work-related decisions. (R. at 227-29, 674-76.) He indicated that Marshall had a satisfactory ability to interact appropriately with the public. (R. at 228, 675.) Lanthorn reported that Marshall was seriously limited in his ability to understand, remember and carry out complex instructions, to make judgments on complex work-related decisions, to interact appropriately with supervisors and co-workers and to respond appropriately to usual work situations and to changes in a routine work setting. (R. at 227-28, 674-75.) Lanthorn reported that Marshall would be absent from work more than two days a month. (R. at 229, 676.) He based this assessment on his diagnoses of generalized anxiety disorder, major depressive disorder, single episode, severe, and pain disorder associated with both psychological factors and a chronic general medical

---

[7]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[8]A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

condition. (R. at 227, 674.)

## III. Analysis

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2010); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in the process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2010).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2010); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated March 12, 2009, the ALJ denied Marshall's claim. (R. at 23-

34.) The ALJ found that the medical evidence established that Marshall had severe impairments, namely obesity, status post repair surgery for hernia, status post surgery for removal of a tumor on his neck, headaches, sleep apnea and hypertension, but he found that Marshall's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 25, 27.) The ALJ also found that Marshall had the residual functional capacity to perform a limited range of sedentary work. (R. at 27.) The ALJ found that Marshall was unable to perform any past relevant work. (R. at 32.) Based on Marshall's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Marshall could perform, including sedentary jobs as a clerical worker, a product grader/sorter, a machine tender and a hand packer. (R. at 32-33.) Thus, the ALJ found that Marshall was not under a disability as defined under the Act and was not eligible for benefits. (R. at 33-34.) *See* 20 C.F.R. § 416.920(g).

Marshall argues that the ALJ erred by failing to give full consideration to the findings of Lanthorn regarding the severity of his mental impairments. (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 6-8.) Marshall also argues that the ALJ erred by failing to adhere to the treating physician's rule and give controlling weight to the opinion of Dr. Bentley. (Plaintiff's Brief at 8-9.)

The ALJ in this case found that the medical evidence established that Marshall had severe impairments, namely obesity, status post repair surgery for hernia, status post surgery for removal of a tumor on his neck, headaches, sleep apnea and

hypertension. (R. at 25.) The ALJ also found that Marshall had the residual functional capacity to perform a limited range of sedentary work. (R. at 27.) Based on my review of the record, I find that substantial evidence does not exist to support this finding.

The ALJ noted that Marshall did not allege mental problems when he filed for disability. (R. at 30.) While Marshall did not allege mental problems when he initially filed his application, the record shows that, on appeal, he alleged disability due to depression. (R. at 192.) The ALJ noted that he was giving little weight to Lanthorn's opinion as to Marshall's work-related mental abilities because it was not completely supported by objective evidence. (R. at 31.) He further noted that he was rejecting Lanthorn's opinion because none of Marshall's treating physicians had referred him for mental health treatment. (R. at 31.) Based on my review of the record, that is not the case. In April 2008, Marshall complained of headaches associated with anxiety and memory loss. (R. at 480.) Dr. White, Marshall's treating physician, referred him for a "mini mental" examination. (R. at 480.) Both Dr. White and Dr. Bentley reported that Marshall could not work based on a number of physical problems and anxiety. (R. at 462.) The ALJ noted that he was rejecting this opinion because Dr. Bentley did not state the specific reason or diagnosis explaining why he considered Marshall disabled. (R. at 32.) This is not so. Dr. White and Dr. Bentley reported that Marshall could not work and that it could not be determined when he could return to work based on his diagnoses of abdominal pain due to an incisional hernia, post-surgical changes, obstructive sleep apnea, hypertension, gastroesophageal reflux disease, *anxiety*, dyslipidemia and history of salivary gland cancer. (R. at 462.)

In December 2008, Lanthorn administered the MMPI-2 test, which indicated

that Marshall had significant problems with concentration and memory difficulties and that he was easily distracted and confused. (R. at 610-12.) Lanthorn also assessed Marshall's GAF score at 55, indicating that he had moderate symptoms or moderate difficulties in social, occupational or school functioning. (R. at 612.) The record shows that Marshall was diagnosed with anxiety and depression beginning in October 2007. (R. at 426, 462, 478, 615.) Both Lanthorn and Dr. White diagnosed Marshall with an anxiety disorder, and both recommended that he seek mental health treatment. (R. at 480, 612.) Based on this, I cannot find that substantial evidence exists to support the ALJ's finding with regard to Marshall's mental residual functional capacity.

Marshall also argues that the ALJ erred by failing to adhere to the treating physician's rule and give controlling weight to the opinion of Dr. Bentley. (Plaintiff's Brief at 8-9.) Based on my review of the record, I also find that substantial evidence does not exist in this record to support the ALJ's finding with regard to Marshall's physical residual functional capacity. The ALJ noted that he did not give Dr. Bentley's opinion controlling weight because it was unsupported by the medical evidence and inconsistent with the other substantial evidence in the record. (R. at 32.) Unfortunately, other than the opinions of Dr. Bentley and Dr. White, the record is devoid of any medical opinion as to Marshall's physical limitations.

The objective medical evidence showed that Marshall had successful surgery, and his x-rays and physical examinations were mostly unremarkable. (R. at 341, 353, 384-85, 387-88, 419-20, 436, 471-72, 489, 583, 618-19, 637.) A cause for Marshall's

alleged pain could not be determined. (R. at 356-58, 360, 363, 552.) Dr. White's[9] physical examinations revealed that Marshall was in no acute distress and he had no distention in the abdominal midline, no enlargement of the liver and spleen, no focal deficits, intact cranial nerves and normal muscle strength in his upper and lower extremities. (R. at 479-87, 614, 622, 626, 664.) Although Dr. Bentley and Dr. White diagnosed Marshall with physical impairments, they did not describe any physical limitations that resulted from those impairments. (R. at 479-87, 614-18.) Assessment forms from Dr. White's office indicate that Marshall did not have any functional limitations. (R. at 617, 624, 628.) Marshall's hypertension and cholesterol were controlled with medication. (R. at 427, 629, 664.) Marshall's sleep apnea improved with the use of a nasal CPAP machine. (R. at 463, 507, 509, 522-24.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Based on these internal inconsistencies, I find that substantial evidence exists to support the ALJ's rejection of Dr. White's and Dr. Bentley's opinions that Marshall was totally disabled. However, having rejected these opinions, there is no medical evidence in the record to support the ALJ's finding with regard to Marshall's physical residual functional capacity.

For all of these reasons, I find that substantial evidence does not exist in the record to support the ALJ's residual functional capacity finding, and I recommend that the case be remanded to the ALJ for further consideration consistent with this Report and Recommendation.

---

[9]The record indicates that Dr. White and Dr. Bentley work together, and that Dr. White treated Marshall.

# PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist to support the ALJ's finding with regard to Marshall's physical residual functional capacity;

2. Substantial evidence does not exist to support the ALJ's finding with regard to Marshall's mental residual functional capacity; and

3. Substantial evidence does not exist to support the ALJ's finding that Marshall was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Marshall's motion for summary judgment, deny the Commissioner's motion for summary judgment, vacate the decision of the Commissioner denying benefits and remand this case to the ALJ for further consideration consistent with this Report and Recommendation.

## <u>Notice to Parties</u>

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2010):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:     This 3rd day of August 2010.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE